Mr. Dent's FLSA wage claim, the waiver that he signed, is limited to the date specified on the waiver form that the DOL provided. It's black-letter law that waivers such as this would be strictly construed. The district court, in ruling on the motion to dismiss, erred by making a very broad holding that the worker waived all of his FLSA claims, his wage claims, including for time periods other than those that were printed in large, handwritten print on the face of the document that the employee signed. This is a de novo review, and we ask the Court to correct this clear error of the waiver.  that the worker waived all of his FLSA claims, including for time periods other than those that were printed in large, handwritten print on the face of the document that the employee signed. the amount of money that presumably this audit determined was due to your client for the time period. And those dates cover a different range, perhaps because the pages aren't in proper sequence. Pages, they call them, I guess, the attachments 2, 3, and 4, or 1, 2, and 3, whichever, they're not ordered right. And so there are dates here that go to an earlier time period. What's right? Well, Your Honor, what he signed was the front page, which has the dates that he's clearly waiving, which is from May of 2002 to October 2003. The worksheet here is a fact. But we know the amounts aren't correct, if that's the case. Well, the amounts may not be correct, but he's not challenging that, Your Honor. What he's challenging is the ability to sue for the earlier time period from when he started working there, June of 2001, up to the beginning date that's mentioned on the form, which would be May 2002. These worksheets only go back to January 2002, so there's still that 2001 period in any event. And it's error. What the district court didn't rely on the worksheets. The district court said, as a matter of law, he's waived all his claims by signing off on this form. And there's nothing in 216C of the Fair Labor Standards Act that requires this all-or-nothing approach. What you have is, under 216C, is an authorization to the Department of Labor to supervise settlements, which is a good thing, because before you had that, parties were unable to effectuate a binding settlement. The Department of Labor, as you see, there's not a lot of law on this because it's so straightforward. You're bound to the dates that you sign off on. But to the extent that there is law and that the communication companies have called our attention to it, they rely on NILAND. And NILAND emphasizes the flexibility that the Department of Labor has to supervise settlements. They have a whole array of methods they can do that. One of those methods is to provide this WH-58 form. They could also use other release forms. In NILAND, what the court said was, and this is in both the NILAND case and also in the Department of Labor brief, which the communication company MCC in its supplemental excerpt showed, they used a release form which said any wages are being released, where our form says such wages. There's a distinct difference there. Also in that release form, it said, and this is all on page 75 of that supplemental record, it said all of the time periods up to a certain date are being waived. Our form does not say that. Our form has a beginning date and an end date. And Mr. Dent is being denied the opportunity to sue for the dates outside those release forms. It's supposed to be strictly construed. Page 67, which is again of that excerpt, which is the NILAND brief, for the Department of Labor says the Department of Labor has to have the flexibility to negotiate waiver language. That's what's done here. There is absolutely no authority for this all-or-nothing approach that the communication companies and the district court permit here. And that's further indicated, Your Honor, if you look at the NILAND case, which has been offered to you, at page 1248, they cite this 29CFR 516.2, which said that in that case, the Department of Labor doesn't have to use this WH form, 58 form, can use another form that they negotiate, which is what they did and what the district court of appeals approved in that case. If you look at 516.2 at a different subpart, which is B1, it makes clear that the employer who enters into these kinds of settlements with the Department of Labor has to specify in its records the time period for which the settlement covers. That's entirely consistent with our view of the case, which is a claimant can't settle a particular part of the case, a particular time period, which is what the district court in its broad ruling did not permit it to do. In this case, they covered a two-year period in paying the wages. Now, your client would have to show willfulness to go back another year, is that right? Yes, Your Honor. The plaintiff would have to show, in order to prevail on the merits, willfulness. But that's not the plaintiff is being denied that opportunity to make that showing, Your Honor. Currently, my understanding is that the department uses a different form, is that right? You know, the department still has WH-58 forms, whether it's used, I believe, Your Honor, whether they've used a different language, I'm not sure. But the language in the WH-58 form, which is part of the record, says you're receiving wages for such wages for such periods of time. It's different than any time, any language, any time period, all claims which the communication companies are urging, and which was the language that was used in the Nyland case, completely distinguishable. But there's a form now that says that, doesn't it? The new form that they're using says all wages up until this time? I couldn't comment on that, Your Honor. But if it did, it would be a different case, wouldn't it? The sky is not falling down here. The Department of Labor can conduct business, can supervise settlements using this form, using a new form, using any language they want based on 216C. But whatever language they use has to be clear and has to be construed strictly so that the employees are not inadvertently waiving claims that they have rights to wages for time that they work. Unless you have any other questions, I'd like to reserve 2 minutes, Your Honor. Good morning, Judge Fletcher, Judge Clifton, and Judge Shade. My name is Rick Ross Kelly. I'm here on behalf of NC Communications. I also have with me Will Devaney, representing Cost Communications, and if possible, I would like to reserve a little bit of time for him to speak also. The issue here really is what is the WH-58? Is it a settlement agreement? Is it a waiver? Or is it simply a receipt of payment? Our position is, and it's consistent with the statute, is the WH-58 is simply a receipt of payment that the Department of Labor has come up with to memorialize its agreement with the employer and with the employee. The statutory language doesn't get clear enough to have you say that with absolute certainty, is it? The language of what, the form itself? Uh-huh. Well, I think so, because the form itself calls it a receipt. It says it's a receipt. In fact, if you look at the case law ---- Receipt for a given time period. The receipt recites a time period for which the wages are being paid. Here's the issue, though. It goes back a step further, and that is, any settlement the Department of Labor enters into, and as you're aware, in 1949, Congress, through Section 16C, gave the authority to regulate and supervise these settlements, any settlement is a compromise. Well, yeah, any settlement is a compromise. You don't need the statute to take it up, but it doesn't say it's a compromise of every claim that might possibly exist. Well, I think it does say that in the statute. In the language where the statute says that, let me find it here. Let's see. Okay. And the agreement of the employee to accept such payment shall, upon payment in full, constitute a waiver by such employee of any right, not of some of the rights, a partial of the rights, but of any right. Keep reading. Don't stop there. Any right he may have under subsection B of this section to such unpaid minimum wages. Not any unpaid minimum wages. Well, such ---- But such unpaid ---- No, not any, but such unpaid minimum wages is referring back to the practices being investigated by the Department of Labor. Obviously ---- And what the Department of Labor does here on this form is deal with the time period between May, which is probably incorrect, but it says May 2002 to October 2003. It doesn't say 2001. It doesn't even say January 2002. No. You're right. There was a mistake obviously made on this form. Because you look at the WH-55s, which are the three pages that you referred to earlier, they clearly indicate the period being audited was a two-year period. And they don't say anything about 2001. And they don't say anything about 2001. But that is, of course, another issue, because we have a two-year statute as the statute of limitations. There can be a three-year statute if the Department of Labor or if the plaintiff in a private suit proves willfulness. Well, implicit in any settlement is the fact the Department of Labor is going to look at it and determine, do we have cause to find willful violation? Do we resolve that with the client by, or with the, excuse me, the employer by not going after the willful violation, by not pursuing liquidated damages, and arrive at a settlement, which is basically the words used in the Walton case where the Seventh Circuit looked at it and said, even though they determined in reality there was no supervised settlement in that particular case, they said a settlement is a compromise. And it's a compromise of the claims. And because you don't get 100 cents on the dollar, or because they don't go after the third year, or because they don't go after liquidated damages is really besides the point. They've compromised the claim, and the Department of Labor is given the statutory authority to compromise the claim. You still got to define what claim. And to be candid, I look at this receipt, and I don't see anything here that suggests that a claim has been compromised other than the claim that's defined on the form. But the claim is the claim that's being audited. And in this particular case, the claim that was audited was the miscalculation of the regular rate by my client. My client had not included the bonuses that were being paid to employees in their determination of what the regular rate was. So that was the practice that was being audited. That was the practice that led to the audit and led to the conclusions. And so our position is, and I think it's absolutely consistent with the authority that Congress has granted the Department of Labor, consistent with Nyland and the Steed case, is that once that practice has been investigated by the Department of Labor, the Department of Labor has total discretion on how to resolve that. That can be resolved in a number of ways. That can be resolved by foregoing the third year. That can be resolved by foregoing liquidated damages. That can even be resolved by collecting part of the monies and not all of the monies. Is there anything in this record that suggests that the wage earner was advised that there was a third year possible? There's nothing in the record that suggests that. But that goes to another issue, and that is really what is the duty of the Department of Labor to suggest that they would have to advise the client that there's a third year possible. Let me step back. In reality, there is something in the record. The WH-58 itself indicates in the notice provision that generally a three-year statute of limitations can apply in these cases, and it also makes reference to the two-year statute. So the employee is given specific notice through the WH-58 of that. But I don't think that's necessary because if you look at the Nyland case and the Steed case, neither of those cases involved a WH-58. They involved similar language that the Department of Labor allowed the employer to use in a separate document in one case and on the back of a check in another case. What the Walton case says on top of that, hey, as long as we know there's been an accepted settlement here and the acceptance is going to be evidenced by, actually the Steed case is the language that the WH-58 has in the notice, as long as we know that this has been, there's been an accepted settlement supervised by the DOL, end of case. On this record, what we know is that there was an acceptance of a settlement for the period on the form. Do we know anything more? Yes. We know that the period on the form, if you're referring to, is the form of the WH-55, not the WH-58, because there's clearly, there was clearly a mistake made when the Department of Labor filled out the WH-58. We know that the period of time covered was that on the WH-55, which shows that it actually goes for a two-year period of times. And, in fact, the first page of the WH-55 actually shows totals being liquidated for each of the three sheets in question covering the entire two-year period. Now, it's obvious that the WH-58 shows the dates. Yes. And you know, and you say it's a mistake because the WH-55 showed a different time period. It appears to be. Did you resolve that at the time? Was that resolved at the time, or was the payment made correctly? I was not involved in the case at that period. The way this happens is that the answer is no, isn't it? The answer is no. The district court didn't rule based on that. Oh, the district court didn't rule based upon it. The district court ruled specifically on the language of the statute and finding that the statute indicates that once there is a settlement by the Department of Labor with the employer and the employee accepts, that liquidates the entire claim for that practice. And that's our position, and that's consistent, we believe, with Nyland and Sneed. Is there anything whatsoever that would make the employee understand that signing this form? I mean, the employee doesn't have to sign. The employee is being told you're accepting this and you're giving up your rights. And from this form, is there anything that the guy would know he's giving up rights for 2001 based on signing this form? Based upon the notice in No. 1, No. 2 and ---- On what notice? Well, on the WH-58, where it talks about the fact that he is giving up his right to bring suit for back wages. Such back wages. It means something. It's not any. It's such. It means the back wages that are available for the audit period for the practice that is audited. The audit period is listed here as May 2002 to October 2003. How would the employee know anything different? The ---- I don't believe the ---- I believe that the Department of Labor has the authority to resolve the claim. Oh, no, no, no, no, no, no. The Department of Labor can't sign for the employee. The employee has to sign this. Right. The employee has to sign that. How does the employee know that 2001 is given up when he signs this form? Because of the notice language that says that the claim has been resolved. I think you've got a problem if we touch on that. Is there any other reason you're going to offer up as to why the employee knows that he's giving up his rights for 2001 based on signing this form? Other than the fact that the statute invests the Department of Labor with the authority to supervise and specifically states that once the money is accepted, the time period is resolved. I mean, you ---- Such wages. Well, you look back at the Walton case, and I think that really is the key here. What does settlement mean? Settlement means that there's a compromise, and you can compromise the time period that's ---- you can compromise the liquidated damages. You can compromise the amount. As a private attorney, I, for clients, compromise things. You surely compromise things all the time. You have partial settlements. How is the employee going to know that this document settles something that's not referenced in the document? I mean, that's just a very practical problem here. It is a problem. It is an issue. But I think that to hold otherwise would mean by necessity that every settlement that the Department of Labor has entered into in the last number of years is going to be subject to re-scrutiny because the 30-year statute is never waived in those specifically. They recite the period of time that wages are being paid for, and it's always a two-year period or shorter. I shouldn't say always, but the majority of time it's a two-year period or shorter. And to hold otherwise would say, hey, because you haven't specifically said the 30-year statute is going to be waived in every single case here, then we're going to be open to allowing a suit. That's contrary to what Congress did in 1949. Government supervision was not exactly sterling in this case, was it? I don't believe it was. Thank you for your argument. You've exhausted your time. I don't know if Mr. Devaney or Devaney has something he can squeeze into a minute, but if you can, we'll ‑‑ well, if you're coming all the way from Atlanta, I guess, the least we can do is give you the minute. Well, I appreciate it. And your weather is much nicer than ours, so I'll let ‑‑ Go to Honolulu. We'll do even better there. May it please the Court again, my name is Will Devaney. I represent Cox Communications, Las Vegas. I guess I would make two quick points, Your Honor. First is with regards to the Sneed case, the Fifth Circuit case, goes to your issue of what was it the employer ‑‑ the employee rather understood. And the Fifth Circuit, in that case, the employee said, I didn't know what I was signing. That was the argument before the district court. Now, the district court didn't make a ruling on that issue. The district court instead said there was no consideration. When it went up to the Fifth Circuit, the Fifth Circuit said, all that's wrong. This isn't a matter of contract interpretation. This is a matter of the effect of the statute. Section 16C does not require the DOL to secure a WH‑58. It doesn't require the DOL to secure any sort of written memorialization. The effect ‑‑ the only thing you have is if the DOL supervised the settlement, and if there was an acceptance of the payment, that's what the statute provides. Common sense, the DOL is the enforcement agency. It has entered into this supervised settlement. The DOL sends out a receipt. What it does is memorialize two important facts. It memorializes the fact that there is a payment and that the employer has offered that payment and, most importantly, that the employee has accepted that payment. Once you have a DOL supervised settlement and once you have the employee accepting payment under those circumstances, then what you have is a statutory waiver. It is not a matter of contract. And if you look at the Sneed case, that's one of the very, very important points that they make in that case. The fact of the matter is the parties, for example, let's say the DOL ‑‑ let's say we limited WH‑58 to simply a two‑year period. The parties are unable under the statute to negotiate that third year. Contract principles can't control here. It has to be a statutory waiver, because the defendant, the employer, in this case MC Communications and Cox, is simply alleged to have been a joint employer. We never employed Mr. Dent. But the fact of the matter is if the employer and the employee wanted to get a third year, they couldn't. They're not empowered to under the statute. That's why it's not a matter of contract interpretation, but rather a statutory waiver. And, again, I'll just ‑‑ the central point is if the DOL supervised the settlement and if there was an acceptance of payment, that's all the statute requires. The receipt is simply a memorialization of that process. Are you saying that the employee is told if the Department of Labor decides to get into this, you take what they give and you aren't entitled to the third year? Now, are they told that? I couldn't tell you, Your Honor, whether they were told that. I do believe, and if I may, and, again, Your Honor, I'm not trying to take more than my minute. I do think I have an understanding of the mistake that was made, and I've written it down so that I can explain it to you clearly. I don't mean to read to you, but I can do so if you think that would be helpful. Just one second. And, again, I apologize. I'm not trying to be rude, but I do want to make sure that I get this correct. The three pages of the WH55s were produced out of order as pages 1, page 3, and then page 2. They presumably were produced in the order they were maintained by the Department of Labor. The first date on page 1 is the work week ending 10-10-03, which corresponds to the 10-11-03 on the WH58. The last date on the third page, which is really page 2 but which is out of order, is the work week ending 5-3-02, which corresponds to the 5-4-02 date on the WH58. Had the pages been in order, the date from page 3 would have been the work week ending 1-11-02. The period reflected on the WH58, therefore, would have been the work week ending 1-11-02 through the work week ending 10-11-03, or approximately a 2-year period. The WH55s are dated 1-3-04. So that's, again, the 2-year period. This reflects the WH58, which that has the language which advises the person signing it that generally a 2-year statute of limitations applies to the recovery of the wages. Perhaps that presumes knowledge on the part of the employee that there might be a third year to which they were entitled. But clearly that is not that. Clearly they are providing the employee with information that you've got a 2-year period of a 2-year period that is being covered by the pay. Generally that's what the statute of limitations provides for. And, again, there is no requirement in 16C that they secure a WH58 or other written records. The acceptance of that payment constituted the waiver of his claims at that point. Again, that's what Congress's – that's what Congress's policy was. We're going to replace private negotiation with government oversight. For good or ill, government oversight was here and he accepted wages under the – he accepted the wages. The WH58 is simply a memorialization of the payment. While it is incorrect, it doesn't matter. And, again, I'm – no, there is a case that is not cited in the briefs. And, again, I'm coming in awful late on this. I wasn't briefed at either the district court level or even here. They're also coming in six minutes after. I'm sorry, Your Honor. But there is a case at the Northern District of Illinois called Cuevas, C-U-E-V-A-S v. Monroe Street City Club, 752 F. Supp. 1405, 1414, 1415. And in particular, in note 2, that's a Northern District of Illinois case from the 1990. And in note 2 of that case, Your Honor, the Court noted that there was a mistake in the WH58, and yet they still upheld the waiver. So, again, Your Honor, I apologize for the delay. Breyer. That was a case which I've got some information about. It does involve a date discrepancy. And I have to say, I understand the argument with regard to, look, the forms are messed up. But that doesn't finish the case and that's not what the district court ruled upon. So I have to give you an observation. We're well over time. We'll give Mr. Borgen more time than the clock will necessarily show, because he had some additional things to respond to. But I will give him an opportunity now for rebuttal. Your Honor, in Sneed, the worker did sign the WH58 or sign the release. So there has to be some signature acknowledging that the employee agrees. Otherwise, the claims are not waived. 216C does not give the Department of Labor the authority to waive all claims when the settlement is for some lesser period that's specified. It just gives them the authority to supervise settlements so that we can have an effective settlement. We have all the greatest respect for the Department of Labor's role in this FLSA administration. We don't think that a proper ruling reversing the district court here will do any harm to the District of Labor. There's no evidence that the District Department of Labor has been unable to effectuate settlements or state the proper time periods, as in Nyland, where it said they're for any wages for the entire time period. The Department of Labor can and should do that. We haven't seen any other settlements that would be jeopardized by a ruling here. We don't have the Department of Labor coming in to join Cox Communications or MC Communications to urge that on this court. We think fairness dictates that the employees be permitted to sign off on a form and that the Department of Labor and the defendants be held to the dates specified on the receipt, on the waiver. It is a waiver, Your Honor. And if there are additional claims against other companies for different time periods, for other kinds of claims, that those claims are not barred by operation of the statute. There's nothing in the statute that says that. Thank you, Your Honors. Roberts. Thank you for the argument. Thank all counsel for the argument. The case is submitted. And the next case on this morning's calendar is the United States v. Betts.
judges: B. Fletcher, Clifton, Shea